**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ZAEEDAH L., o/b/o T.K.L., a minor,

                Plaintiff,

                v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

**Civil Action No.: 21-11629 (ES)**

**OPINION**

**SALAS, DISTRICT JUDGE**

Zaeedah L., acting on behalf of her minor daughter T.K.L. ("Plaintiff" or "Claimant"), appeals the decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1). The Court decides this matter without oral argument under Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner.

## I.      BACKGROUND

On October 10, 2017, Plaintiff's mother, Zaeedah L., filed a protective application for SSI on behalf of Plaintiff, alleging disability beginning September 1, 2016. (D.E. No. 5-2, Administrative Record ("Tr.") at 17). The claim was initially denied on July 26, 2018. (*Id.*). Plaintiff subsequently filed a request on November 26, 2018, for a hearing in front of an Administrative Law Judge. (*Id.*) The Commissioner granted Plaintiff's request, and on November 25, 2019, Administrative Law Judge Peter R. Lee (the "ALJ") held a hearing at which Plaintiff

appeared and testified.  (*See generally id.* at 61–98).  At the hearing, Plaintiff amended her disability onset date to September 1, 2018.  (*Id*. at 68).

On February 5, 2020, the ALJ denied Plaintiff's application, concluding that Plaintiff "has not been disabled, as defined in the Social Security Act, since September 1, 2018."  (*Id*. at 26).  Specifically, the ALJ found that Plaintiff's disability was not medically or functionally equivalent to a listed impairment (a "listing") found in Appendix 1 of 20 C.F.R. Part 404, Subpart P because Plaintiff had (i) "less than a marked limitation in acquiring and using information" (Tr. at 20, 25); (ii) "less than a marked limitation in attending and completing tasks" (*id*. at 20, 25–26); (iii) "less than a marked limitation in interacting and relating with others" (*id*. at 20, 26); (iv) "no limitation in moving about and manipulating objects" (*id*.); (v) "less than a marked limitation in the ability to care for himself/herself" (*id*.); and (vi) "less than a marked limitation in health and physical well-being" (*id.*).  On April 7, 2020, Plaintiff requested an Appeals Council review, which was denied on March 22, 2021.  (*Id*. at 1).

On May 21, 2021, Plaintiff appealed the Commissioner's decision by filing a complaint with this Court.  (D.E. No. 1).  The Court received the administrative record on August 25, 2021.  (D.E. No. 5).  The parties have fully briefed the issues raised by Plaintiff's appeal.  (*See* D.E. No. 8, ("Mov. Br."); D.E. No. 13, ("Opp. Br."); D.E. No. 14, ("Reply")).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits

Under the Act, the Social Security Administration is authorized to pay supplemental security income to "disabled" persons.  42 U.S.C. § 1382(a).  A child (*i.e.*, "[a]n individual under the age of 18") is "disabled" if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . which has lasted or can be expected

2

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Regulations promulgated under the Act set forth a three-step sequential process for determining whether a child is disabled. 20 C.F.R. § 416.924. The claimant bears the ultimate burden of establishing these three steps. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)).

**Step One.** At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id*. §§ 416.972(a), (b). If the child is engaging in substantial gainful activity, then the child is not disabled and the ALJ's inquiry ends. *Id*. If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ proceeds to step two.

**Step Two.** At step two, the ALJ determines whether the child suffers from a severe impairment or combination of impairments. *Id*. § 416.924(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id*. Conversely, if the child has a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id*. § 416.924(a).

**Step Three.** At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listing. *Id*. § 416.924(d). If the child has an impairment that meets, medically equals, or functionally equals a listing, the child is deemed disabled under the Act. *Id*. § 416.924(d)(1).

An impairment or combination of impairments is "medically equivalent" to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id*. § 404.1526(a). To determine whether an impairment medically equals a listing, the ALJ considers all relevant evidence in the record about the impairment and its effects on the claimant. *Id*. § 416.926(c).

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005).   A child has an impairment or combination of impairments that "functionally equals" a listing if the child has either two "marked" limitations or one "extreme" limitation in the following domains: "(i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, or (vi) health and physical well-being." 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi).   A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).   A "marked" limitation is "'more than moderate' but 'less than extreme.'" *Id.*   A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).   While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.*   In determining whether an impairment or combination of impairments "functionally equals" a listing, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. *Id.* §§ 416.926a(a)(1)-(3).

**B.      Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Poulos*, 474 F. 3d at 91).   But the "findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added).   As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on

4

the context.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In this context, "the threshold for such evidentiary sufficiency is not high."  *Id.*  Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry.  *Id.* at 1157.  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154.  And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F. 3d 541, 545 (3d Cir. 2003)).  Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions."  *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006) (citing *Perales*, 402 U.S. 389 at 401).  The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F. 2d 1002, 1007 (3d Cir. 1984)).

Nonetheless, an "ALJ cannot reject evidence for no reason or for the wrong reason."  *Cotter v. Harris* (*Cotter I*), 642 F.2d 700, 706 (3d Cir. 1981) (citing *King v. Califano*, 615 F. 2d 1018 (4th Cir. 1980)).  Thus, an ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).  That rule, however, "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of [the rule] is to

5

ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III.    THE ALJ'S DECISION

At step one, the ALJ found that "[Plaintiff] has not engaged in substantial gainful activity" since September 1, 2018.  (Tr. at 18).

At step two, the ALJ found that Plaintiff had the following severe impairments: learning disorder; attention deficit hyperactivity disorder; intellectual disorder (moderate); and oppositional defiant disorder.  (*Id.*).  The ALJ further found that these impairments had "resulted in more than minimal functional limitations."  (*Id.*).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)."  (*Id.*).  The ALJ specifically considered medical listings 112.02, 112.05, 112.08, and 112.11 and found that the requirements of those listings were not met or equaled.  (*Id.* at 18–19).  Plaintiff contests the ALJ's finding as to only medical listing 112.05B ("Listing 112.05B") in her appeal.  (Mov. Br. at 1, 32).  As such, this Court limits its assessment of the ALJ's decision to this listing.

In making his determination, the ALJ found that Plaintiff had a (i) "moderate limitation in understanding, remembering, or applying information;" (ii) "moderate limitation in interacting with others;" (iii) "moderate limitations in concentrating, persisting, or maintaining pace;" and (iv) "moderate limitation in adapting or managing herself."  (*Id.* at 19).  Because medical listing 112.05B requires either extreme limitation in one or marked limitation in any two of the above categories, the ALJ found that Plaintiff had not met the requirements of the listing.  The ALJ also considered claimant's intelligence tests, noting that "while intelligence tests in the record have

yielded full scale IQs of 47 and 68, there is significant reason to question whether such scores are valid indicators of the claimant's actual cognitive abilities[.]"  (*Id*.).

The ALJ further found that Plaintiff "does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a)."  (*Id*.).  In so finding, the ALJ found that Plaintiff had (i) "less than a marked limitation in acquiring and using information" (*id*. at 20, 25); (ii) "less than a marked limitation in attending and completing tasks" (*id*. at 20, 25–26); (iii) "less than a marked limitation in interacting and relating with others" (*id*. at 20, 26); (iv) "no limitation in moving about and manipulating objects" (*id*.); (v) "less than a marked limitation in the ability to care for himself/herself" (*id*.); and (vi) "less than a marked limitation in health and physical well-being" (*id.*).

Based on this analysis, the ALJ concluded that Plaintiff "has not been disabled, as defined in the Social Security Act, since September 1, 2018[.]"  (*Id*. at 26).

## IV.   DISCUSSION

Plaintiff assigns several errors to the ALJ's decision.  (*See generally* Mov. Br.).  Each assigned error relates to step three, at which the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets, medically equals, or functionally equals a listing.  (Tr. at 18, 19).  *First*, Plaintiff argues that the ALJ erred at step three in concluding that Plaintiff had less than marked limitations in the functional domains of (i) "acquiring and using information" (Mov. Br. at 19), (ii) "interacting and relating to others" (*id.* at 22–27), and (iii) "caring for yourself" (*id*. at 27–31).  *Second*, Plaintiff argues that the ALJ additionally erred at step three in failing to find that Plaintiff's intellectual disability met the requirements of Listing 112.05B.  (*Id.* at 32–33).  The Commissioner opposes each of Plaintiff's arguments.  (Opp. Br. at 12–24).

Plaintiff asks the Court to "reverse the ALJ's decision and remand her claim for an award of benefits, or in the alternative, a new hearing and decision[.]"  (Mov. Br. at 33).  The Court addresses each argument in turn.

### A.    Less than Marked Limitations

#### i.    Acquiring and Using Information

Plaintiff argues that the ALJ erred at step three by failing to discuss medical and non-medical evidence in the record that, according to Plaintiff, supports a finding of a marked limitation in acquiring and using information, and by discounting Plaintiff's low IQ scores.  (Mov. Br. at 19). The Commissioner opposes, arguing that the ALJ considered Plaintiff's "academic struggles and her need for supportive educational services, as well as her low IQ scores" and "reasonably found that [Plaintiff] had less than a marked limitation" in this domain.  (Opp. Br. at 13).  The Court agrees with the Commissioner.

The domain of acquiring and using information measures how well a child acquires and learns information and how well a child uses the information she has learned.  *See* 20 C.F.R.§ 416.926a(g).  For adolescents specifically, this domain measures whether a child can demonstrate what she has learned by completing academic assignments, use what she has learned in daily living situations without assistance, comprehend and express both simple and complex ideas, use increasingly complex language, and apply these skills in practical ways.  *See id*. § 416.926a(g)(2)(v).  Examples of limited functioning in acquiring and using information include failing to understand words about time, size, or space; having difficulty recalling important items learned in school the day before; having difficulty computing arithmetic answers or solving mathematics questions; and talking only in short, simple sentences and having difficulty explaining oneself.  *See id*. § 416.926a(g)(3).

The ALJ's finding that Plaintiff had a less than marked limitation in the domain of acquiring and using information is supported by substantial evidence. The ALJ concluded that Plaintiff's "passing grades and some of [her] acknowledged activities, including performing self-care tasks, helping herself to snacks, knowing how to perform household chores when motivated to do so, and working part-time as a cashier, indicate the claimant is not markedly limited in her capacity to learn and use what she has learned." (Tr. at 25). In reaching this conclusion, the ALJ considered the findings from psychological evaluations conducted by the Children's Service Center over several months. (*Id.* at 24). Specifically, the ALJ considered: (i) findings from a February 2019 evaluation which found that although Plaintiff's "mental status examination revealed poor insight and judgment[,]" it otherwise indicated "normal mood and congruent affect, with general appearance, speech, language, attention span and concentration, thought content and process, cognition, associations, orientation, fund of knowledge, and memory . . . within normal limits" (*id.*); (ii) findings from a March 2019 evaluation of "poor concentration and attention span and fair insight and judgment, but otherwise essentially unchanged findings" (*id.*); and (iii) findings from a June 2019 evaluation of "poor insight and judgment" but otherwise normal findings, with additional notes that Plaintiff's "grades, while not good, had been passing" (*id.*). While the ALJ considered Plaintiff's "history of special education supportive services" (*id.* at 21), he also noted comments from Plaintiff's math teacher that "she performed well academically, including often assisting classmates with their assignments" (*id.* at 21–22). Finally, the ALJ considered findings from a multidisciplinary evaluation in January 2019 that "claimant's repeated absences and suspensions due to misbehavior were also cited as negatively impacting the claimant's academic progress even though she understood and retained academic concepts well, could work well independently, and could be helpful to other students who were struggling." (*Id.*

at 23).  These considerations provide a "satisfactory" basis for the ALJ's conclusion that Plaintiff had a less than marked limitation in the domain of acquiring and using information.  *Cotter I*, 642 F.2d at 704 (stating that an ALJ's decision must provide a "clear and satisfactory explication of the basis on which it rests").

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff argues that the ALJ "failed to adequately discuss the medical and non-medical evidence that supports a finding of a marked limitation in this domain."  (Mov. Br. at 19).  However, as demonstrated above, the ALJ engaged extensively with both medical and non-medical evidence in the record and nonetheless reached the conclusion that Plaintiff had a less than marked impairment in this domain.  (*See* Tr. at 25).  The role of this Court is to assess whether the ALJ's decision is supported by substantial evidence, not to determine whether the ALJ could or should have reached a different conclusion.  To the extent Plaintiff asks the Court to reweigh the record evidence, the Court cannot do so. *Williams*, 970 F.2d at 1182 (citing *Heckler*, 743 F. 2d at 1007).

Second, Plaintiff's argument that the ALJ "ma[de] mistakes of fact in characterizing the evidence[,]" specifically pointing to "[t]he ALJ's dismissal of T.K.L.'s low IQ scores[,]" is similarly unavailing because the ALJ's decision is supported by substantial evidence.  (Mov. Br. at 19).  Plaintiff puts forth that her IQ scores of 47 and 68—revealed during testing performed by Charles Lajeunesse, Ph.D., on June 6, 2018, and William Milz, Ed. S., in January 2019 respectively—are sufficient to demonstrate a "marked limitation" as defined in the regulations promulgated under the Act.[1]  (Mov. Br. at 20).  Plaintiff then argues that "[t]his alone requires a

---

[1]       The Act provides that a "'[m]arked' limitation . . . is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean" 20 C.F.R. § 416.926a(e)(2)(i).

finding that the claimant has marked limitations acquiring and using information." (*Id.*).   The Court disagrees.

Even if Plaintiff's true IQ score was as low as the testing indicated, the regulations provide that the Commissioner "will not rely on any test score alone" and that "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i).   As discussed above, the ALJ considered Plaintiff's "low IQs" together with other evidence, and the record as a whole provides substantial evidence to support the ALJ's conclusion.   (Tr. at 19, 25).

Further, the ALJ adequately explained that he did not accord substantial weight to the IQ tests because two independent examiners noted the results were likely skewed.  *See Burnett*, 220 F.3d at 121 (stating that an ALJ must explain why he discounted certain evidence).   The ALJ specifically explained that he discounted Plaintiff's low IQ scores because "examiners have also noted there is reason to think such scores are not actually reflective of profound cognitive deficits, and were most likely contributed to by the claimant's attentional and behavioral issues, including her passive-aggressive behavior toward authority figures and rushed approach to testing." (Tr. at 25).   Though Plaintiff points to circumstantial evidence that the examiners still found her "intellectual deficits" to be "quite severe" (Mov. Br. at 20), Plaintiff essentially asks the Court to reweigh the evidence of record, which it cannot do.  *See Williams*, 970 F.2d at 1182 (citing *Heckler*, 743 F. 2d at 1007).

Thus, the Court finds that the ALJ's conclusion that Plaintiff had a less than marked limitation in the domain of acquiring and using information is supported by substantial evidence.

### ii.    Interacting and Relating with Others

Plaintiff argues that the ALJ erred at step three by failing to adequately explain his finding that Plaintiff had a less than marked limitation in the domain of interacting and relating with others

because (i) the ALJ cited to "lengthy exhibits" such that his decision is inadequate for judicial review, and (ii) the ALJ failed to explain his rejection of "overwhelming" probative contrary evidence. (Mov. Br. 24, 26–27, 29). The Commissioner opposes, arguing that the ALJ considered contrary evidence, but there is ultimately "ample support" for his finding as to this domain. (Opp. Br. 18). The Court agrees with the Commissioner.

The domain of interacting and relating with others measures how well a child initiates and sustains emotional connections with others, develops and uses appropriate language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R.§ 416.926a(i)(1)(i). For adolescents specifically, this domain measures whether a child can initiate and develop friendships, relate appropriately to other children and adults, solve conflicts between herself and others, recognize that there are different social rules in different contexts, intelligibly express her feelings, ask for assistance in getting her needs met, and seek information, describe events, and tell stories in all kinds of environments. *Id.* § 416.926a (i)(2)(v). Examples of limited functioning in interacting and relating with others include not having close friends, avoiding or withdrawing from people, feeling overly anxious or fearful of meeting new people or trying new experiences, having difficulty communicating with others, and having difficulty speaking intelligibly or with adequate fluency. *Id*. §§ 416.926a(i)(3)(i)-(vi).

The ALJ's finding that Plaintiff had a less than marked impairment in the domain of interacting and relating with others is supported by substantial evidence. In making this finding, the ALJ specifically considered Plaintiff's "fairly regular disciplinary issues at school, typically around disrespectful behavior toward authority figures and conflicts with peers" and concluded that "the longitudinal record certainly establishes some degree of limitation with respect to interpersonal functioning due to the claimant's hyperactivity and a history of oppositional

behavior."  (Tr. at 25, 26).  Nonetheless, the ALJ found that "medical and school records also indicate the claimant has some friends and is generally able to get along with family members and people at her job as a cashier, suggesting a less than marked limitation [in this domain]."  (*Id.* at 26).  The ALJ explained that he "found persuasive" an assessment of State agency medical consultant Crescenzo Calise, M.D., which concluded that Plaintiff had a less than marked limitation in the domain of interacting and relating with others.  (*Id.* at 25).  These considerations provide a "satisfactory" basis for the ALJ's conclusion that Plaintiff had a less than marked limitation in the domain of interacting and relating with others.  *Cotter I*, 642 F.2d at 704.

Plaintiff's arguments to the contrary are unavailing.  Specifically, Plaintiff argues that the ALJ's finding as to the domain of interacting and relating with others is not supported by substantial evidence for three reasons.  First, Plaintiff argues that the ALJ's "entire rationale" regarding this domain "was encapsulated in one sentence[.]"  (Mov. Br. at 23).  However, the ALJ's rationale was not limited to his single concluding sentence regarding this domain, as his decision is to be read as a whole.  *See Domkos v. Colvin*, No. 15-2660, 2016 WL 1732380, at *4 (D.N.J. May 2, 2016) (allowing an ALJ's analysis of relevant medical evidence in one step of a decision to support the ALJ's conclusion in another step).  And as discussed herein, the ALJ's rationale throughout his opinion is supported by substantial evidence.

Second, Plaintiff argues that the ALJ's "citation to lengthy exhibits without specific references to the record . . . is inadequate to permit judicial review of his conclusion."  (Mov. Br. at 24).  But the ALJ cited to specific portions of the record in his step-three analysis.  (*See e.g.*, Tr. at 22, 23).  Further, the ALJ is not required to explain his rationale with particularity.  *See Jones*, 364 F.3d at 505 (explaining that the ALJ does not need "to use particular language or adhere to a particular format in conducting his analysis"); *Cotter v. Harris* (*Cotter II*), 650 F.2d 481, 482 (3d

Cir. 1981) ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."). The ALJ's discussion of evidence pertaining to this domain is thus sufficient to enable this Court's review, and the Court finds that the ALJ's conclusion is supported by substantial evidence.

Third, Plaintiff argues that the ALJ's "failure to explain his rejection of probative evidence supporting a contrary finding" together with "overwhelming evidence" supporting a contrary finding, renders his conclusion unsupported by substantial evidence. (Mov. Br. at 26, 27). The Court disagrees. Again, the ALJ does not need to provide a "comprehensive explanation" for his rejection of each piece of evidence. *Cotter II*, 650 F.2d at 482. Further, as in the domain of acquiring and using information, this argument is unpersuasive insofar as it asks this Court to reweigh record evidence and evaluate whether the ALJ reached the correct conclusion.

The Court further finds this argument unavailing because the ALJ did consider the evidence Plaintiff claims was ignored and cited to evidence that appears to contradict what Plaintiff considers "probative." For example, the ALJ considered comments by Dr. Lajeunesse noting that Plaintiff "tended to lose her temper easily, argue, and become easily annoyed in her relationships with her mother and siblings" and "lost her temper easily with friends." (Tr. at 22). The ALJ also considered, however, Dr. Lajeunesse's comment that Plaintiff's "relationships with her mother, friends, and others were also described as good most of the time, including having friends both in the neighborhood and at school, getting along fine with her family, and liking to play with her cousins." (*Id.*). Similarly, the ALJ considered a multidisciplinary evaluation of Plaintiff from January 2019 which noted "16 different discipline referrals to the school administration due to misbehavior just during the 2018–2019 school year, typically for disruptive behavior, unbecoming

14

conduct, or cell phone use violations" but also noted that Plaintiff "was observed to get along with her teachers[.]" (*Id.* at 23).

Because it would be improper for this Court to weigh the evidence itself, this Court gives deference to the ALJ's analysis. *See Williams*, 970 F.2d at 1182 (citing *Heckler*, 743 F. 2d at 1007). The Court is satisfied that the ALJ's conclusion that Plaintiff had a less than marked limitation in the domain of interacting and relating with others is supported by substantial evidence.

### iii.   Caring for Yourself

Plaintiff argues that the ALJ erred at step three by failing to consider "overwhelming" probative evidence that weighs against the ALJ's finding that Plaintiff had a less than marked limitation in the domain of caring for yourself because he (i) cited Plaintiff's denials of self-harm as evidence in support of his finding as to this domain and (ii) focused on Plaintiff's ability to complete self-care tasks rather than on her ability to regulate her emotions. (Mov. Br. 27–31). The Commissioner opposes, arguing that the ALJ appropriately considered evidence of Plaintiff's ability to engage in self-care tasks, denials of self-harm, and independence at school in reaching his decision as to this domain, and that the ALJ's decision is supported by substantial evidence. (Opp. Br. at 18–21). The Court agrees with the Commissioner.

The domain of caring for yourself measures how well a child maintains a healthy emotional and physical state, copes with stress and changes in her environment, and takes care of her own health, possessions, and living area. 20 C.F.R.§ 416.926a(k). The regulations provide the following regarding the implications of this domain for adolescents:

> You should feel more independent from others and should be increasingly independent in all of your day-to-day activities. You may sometimes experience confusion in the way you feel about yourself. You should begin to notice significant changes in your body's development, and this can result in anxiety or worrying about yourself and your body. Sometimes these

> worries can make you feel angry or frustrated.  You should begin to discover appropriate ways to express your feelings, both good and bad (e.g., keeping a diary to sort out angry feelings or listening to music to calm yourself down).  You should begin to think seriously about your future plans, and what you will do when you finish school.

*Id*. § 416.926a(k)(2)(v).  Examples of limited functioning in this domain include having restrictive or stereotyped mannerisms, not dressing or bathing appropriately, engaging in self-injurious behavior or ignoring safety rules, failing to spontaneously pursue enjoyable activities or interests, and experiencing a disturbance in eating or sleeping patterns.  *Id*. § 416.926a(k)(3)(i)-(vi).

The ALJ's finding that Plaintiff had a less than marked impairment in the domain of caring for yourself is supported by substantial evidence.  In making this finding, the ALJ explained that though "the claimant's history of impulsive behavior, at times manifesting as getting into fights at school, suggests some degree of limitation in the domain of caring for herself," substantial evidence supported a finding of a less than marked impairment in this domain.  (Tr. at 26).  As support, the ALJ noted that "there is no substantial evidence to suggest the [Plaintiff] does not perform age-appropriate self-care tasks, engages in self-injurious behavior, or demonstrates restrictive mannerisms" and cited record evidence which suggested that Plaintiff had "age-appropriate adaptive functioning[,] . . . an ability to navigate the school environment independently," and was able to engage in "enjoyable activities."  (*Id*.).  Further, the ALJ considered that Plaintiff "reported she finds using her telephone relaxing" (*id*. at 21), "acknowledged being able to dress, bathe, and groom herself at age-appropriate levels" (*id*. at 22), and "reported good sleep and appetite" (*id.* at 24).  The ALJ also considered Plaintiff's job as a cashier, the fact that she completed chores at home, and the fact that she "has acknowledged engaging in enjoyable activities" including "playing with her cousins, watching TV, and listening to music."  (*Id*. at 26).  These considerations, together with other record evidence cited by the

ALJ throughout his step-three analysis, provide substantial evidence to support the ALJ's finding that Plaintiff had a less than marked impairment in this domain.[2]

Although Plaintiff points to three reasons why she believes the ALJ's finding as to this domain is not supported by substantial evidence, the Court is unpersuaded.  First, Plaintiff argues that the ALJ ignored "overwhelming" and "highly probative" evidence in support of a finding of a marked impairment in this domain.  (Mov. Br. at 29–30).  As previously discussed, the Court rejects this argument insofar as it amounts to a request that this Court reweigh the record evidence.[3]  *See Williams*, 970 F.2d at 1182 (citing *Heckler*, 743 F. 2d at 1007).

Second, Plaintiff argues that "there is nothing in the regulations that requires that a child must engage in self-harm or self-injurious behavior to be assessed with a marked impairment." (Mov. Br. at 29).  It is true that indications of self-harm do not conclusively demonstrate a marked impairment in this domain—likewise, the absence of self-harm does not conclusively demonstrate a less than marked impairment in this domain.  *See* 20 C.F.R. § 416.926a(k)(3)(iv).  Rather, self-injurious behavior is one example of limited functioning in this domain.  *Id*.  Consistent with the regulations, the ALJ did not rely solely on the absence of any indication of self-harm by Plaintiff but pointed to it as one factor in his finding that Plaintiff had a less than marked limitation in this domain.  (Tr. at 26).

Third, Plaintiff argues that "the regulations direct that this domain does not concern an individual's ability to perform self-care tasks but focuses instead on a child's ability to regulate

---

[2]     Plaintiff argues that the ALJ relied too heavily on "the opinions from a non-examining state agency medical consultant." (Mov. Br. at 31).  The Court disagrees.  Contrary to Plaintiff's argument, the ALJ did not "exclusively" rely on Dr. Calise's opinion in making his finding.  (*See id.*).  Rather, as shown throughout this section, the ALJ considered the record as a whole in reaching his conclusion.  (*See e.g.*, Tr. at 21, 22, 24, and 26).

[3]     Plaintiff argues that the ALJ failed to consider a Behavior Assessment System for Children ("BASC-2") administered to Plaintiff in December 2018 because the ALJ does not cite to the test in his opinion.  (Mov. Br. at 30). The ALJ is not required to reference every relevant piece of medical evidence in his functional equivalence analysis. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  Thus, this argument is unavailing.

their emotions to meet the daily demands of their environment, exercise appropriate judgment, and use effective coping strategies to navigate their environment." (Mov. Br. at 29 (citing 20 C.F.R.§ 416.926a(k)(1))). However, this domain measures how well an individual cares for *both* their physical and emotional well-being. The regulations provide that this domain is "characterized by a sense of independence and competence," explaining that "caring for yourself includes using your independence and competence to meet your physical needs" and having "a basic understanding of your body . . . and of your physical and emotional needs[.]" 20 C.F.R.§ 416.926a(k)(1)(i)-(iii). Based on these regulations, the ALJ appropriately considered Plaintiff's "ability to navigate the school environment independently" and to complete self-care tasks in conducting his functional equivalence analysis for this domain, as both provide relevant evidence of Plaintiff's physical and emotional well-being. (Tr. at 26).

The Court is therefore satisfied that the ALJ's conclusion that Plaintiff had a less than marked limitation in the domain of caring for yourself is supported by substantial evidence.

### B.   Listing 112.05B

Plaintiff argues that the ALJ erred at step three by discounting Plaintiff's low IQ scores and by finding that Plaintiff did not have an extreme limitation in one, or a marked limitation in two, areas of mental functioning, and so did not meet the requirements of Listing 112.05B. (Mov. Br. at 32). The Commissioner opposes and argues that the ALJ appropriately questioned the validity of Plaintiff's low IQ scores and correctly found that Plaintiff did not have an extreme limitation in one, or a marked limitation in two, areas of mental functioning. (Opp. Br. at 21–24). The Court agrees with the Commissioner.

Listing 112.05 provides the mental disorder category of "intellectual disorder." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.05. "This disorder is characterized by significantly subaverage

general intellectual functioning and significant deficits in current adaptive functioning." *Id.* § 112.00(B)(4)(a). To medically equal this listing, a claimant must meet the requirements of either 112.05A or 112.05B. *Id.* § 112.05.

To medically equal Listing 112.05B, a claimant must satisfy the requirements of both 112.05B1 and 112.05B2. *Id.* § 112.05(B). Under 112.05B1, a claimant must demonstrate significantly subaverage general intellectual functioning evidenced by either "a full scale . . . IQ score of 70 or below" or "a full scale . . . IQ score of 71-75 accompanied by a verbal or performance IQ score . . . of 70 or below." *Id.* The regulations provide that the Agency will "generally presume that your obtained IQ score(s) is an accurate reflection of your general intellectual functioning, unless evidence in the record suggests otherwise." *Id.* § 112.00(H)(2)(d). Such evidence could come from a "statement from the test administrator indicating that your obtained score is not an accurate reflection of your general intellectual functioning" if the statement is based on "clinical observations made during the testing period." *Id.*

The ALJ concluded that Plaintiff did not attain the requisite IQ scores to meet the requirements of 112.05B1, and therefore Plaintiff did not meet Listing 112.05B. This conclusion is supported by substantial evidence. Though Plaintiff attained IQ scores of 47 and 68, which would be low enough to meet the requirements of 112.05B1, the ALJ noted that "there is significant reason to question whether such scores are valid indicators of the claimant's actual cognitive abilities[.]" (Tr. at 19). The ALJ points to Dr. Lajeunesse's assessment that the IQ score of 47 was "somewhat low because of the claimant's passive aggressive nature throughout testing" and that it "did not represent the claimant's real IQ." (*Id.* at 22). Further, the ALJ considered Mr. Milz's belief that the IQ score of 68 "may underestimate [Plaintiff's] overall intellectual ability" because Plaintiff "was observed to rush through multiple-choice questions without taking enough

time to review all answer options and quickly answering 'I don't know' when completing items that required her to answer questions verbally, while not slowing down to answer to the best of her ability even when redirected." (*Id*. at 23). These considerations provide a "satisfactory" basis for the ALJ's conclusion that Plaintiff did not meet Listing 112.05B. *Cotter I*, 642 F.2d at 704.

Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that the ALJ should not have discounted the IQ score of 47 given by Dr. Lajeunesse because he later diagnosed her with a moderate intellectual disability, which Plaintiff alleges is defined as having an IQ score range from "35–40 to 50–55." (Mov. Br. at 32, n.4). Based on this diagnosis, Plaintiff seems to argue that even if her IQ score of 47 did not reflect her full cognitive abilities, her actual IQ score could not have been higher than 55. However, when tested six months later by Mr. Milz, Plaintiff attained a score of 68, which was also found to be lower than her actual cognitive abilities. (Tr. at 23). The ALJ considered each of these scores, including Dr. Lajeunesse's diagnosis of a moderate intellectual disability and the statements by the test administrators that the scores were lower than Plaintiff's actual cognitive abilities, and found that the requirements of 112.05B1 had not been met.

Further, the ALJ provided that, "even if, for the sake of argument, such IQ scores were considered valid, the requirements of listing 112.05 would still not be met" because Plaintiff did not satisfy the requirements of 112.05B2. (Tr. at 19). Under 112.05B2, significant deficits in adaptive functioning are measured by having an extreme limitation in one or a marked limitation in two areas of mental functioning, including the ability to (i) "[u]nderstand, remember, or apply information"; (ii) "[i]nteract with others"; (iii) "[c]oncentrate, persist or maintain pace"; and (iv) "[a]dapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.05(B)(2). The ALJ concluded that "the overall record does not substantiate significant deficits in adaptive functioning

manifested by extreme limitation of one, or marked impairment in any two, of the four 'paragraph B' criteria." (Tr. at 19).  Rather, pointing to his functional equivalence analysis, the ALJ found that Plaintiff had only a moderate limitation in each of the criteria.  (*Id.*).

According to Plaintiff, the record contains evidence sufficient to support a finding of marked limitations in each of the relevant mental functioning categories.  (Mov. Br. at 32).  As with the ALJ, Plaintiff points to her arguments on the functional equivalence domains for support. (*Id.*).  For the same reasons this Court rejects Plaintiff's arguments pertaining to the functional equivalence domains of acquiring and using information, interacting and relating with others, and caring for yourself, the Court does so here.

Thus, the Court is satisfied that the ALJ's conclusion that Plaintiff did not have an impairment that medically equals listing 112.05B is supported by substantial evidence.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.   An appropriate Order accompanies this Opinion.

Dated: November 23, 2022

**Hon. Esther Salas, U.S.D.J.**